The appellant, Mike Allen Page, was convicted of assault in the second degree in violation § 13A-6-21, Code of Alabama 1975. His sentence of 10 years' imprisonment was split, with 3 years to be served in prison and the balance on probation. He raises six issues on appeal.
 I
The appellant argues that the trial court erred by instructing the jury on assault in the second degree, as defined by § 13A-6-21(a)(1), (2) and (3), Code of Alabama 1975, when the appellant was charged by indictment with assault as defined only by § 13A-6-21(a)(2). This argument, however, is procedurally barred because the appellant failed to object to the trial court's oral charge. Turrentine v. State,574 So.2d 1006 (Ala.Cr.App. 1990); A.R.Cr.P. 21.2.
 II
The appellant contends that his trial counsel was ineffective. The record reflects the following: On March 18, 1992, the appellant was convicted of assault in the second degree. On May 8, 1992, the appellant was sentenced. On May 14, 1992, the appellant's trial counsel moved to withdraw. On the same day, the trial court temporarily denied the motion to withdraw until the appellant furnished the court with the name and address of his newly retained counsel. On May 18, 1992, the trial court ordered the appellant to appear in court on May 29, 1992, with his newly retained counsel. The record does not reflect when the appellant retained his appellate counsel. On June 8, 1992, new counsel filed a motion for a new trial; however, he did not allege ineffective assistance of counsel as a ground for that motion. The motion did contain the following statement:
 "Further, defendant has requested and paid for the preparation of a transcript of the trial court proceedings for review by his new counsel and the defendant requests this Court to grant permission to allow the defendant to amend and perfect this motion and to prepare, present for approval, and file a brief of evidence in this cause. . . ."
On June 10, 1992, the trial court summarily denied the motion without comment.
The state argues that the ineffective assistance issue is procedurally barred *Page 443 
because the appellant did not present it to the trial court and cites Ex parte Jackson, 598 So.2d 895 (Ala. 1992), wherein the Alabama supreme court adhered to the rule that " 'claims of ineffective assistance of counsel may not be considered for the first time on direct appeal.' " Id. at 897 (quoting Jackson v.State, 534 So.2d 689, 692 (Ala.Cr.App. 1988) (quoting other sources)). In Ex parte Jackson, the court noted the following procedure by which newly appointed counsel could preserve issues through a motion for a new trial after having reviewed the trial record:
 "We recognize that when an attorney is appointed to represent a defendant on appeal, it is unlikely that the reporter's transcript will be made available to him before the 30-day period within which to file a motion for a new trial has expired. Although some grounds for a new trial may be discovered in the absence of a transcript, the absence of a transcript may prevent appointed appellate counsel from ascertaining all of the grounds to support a motion for a new trial. Therefore, we hold that if the trial court appoints new counsel to represent the defendant on appeal, the trial court shall note that fact on the case action summary sheet, and shall also note that the time within which to file a motion for a new trial is extended in such case, provided the following occurs: If newly appointed counsel files a motion with the court within 14 days after his appointment, requesting that the running of the time within which to file a motion for new trial be suspended until such time as the reporter's transcript is prepared and filed, then in that event, the 30-day period within which to file a motion for new trial shall be computed from the date the reporter's transcript is filed, which date shall be entered on the case action summary sheet, rather than from the date of the pronouncement of sentence, as provided for in Rule 24, A.R.Crim.P. Appellate counsel will then have the means to raise all appropriate issues before the trial court. We believe that this exception to the rule that '[a] motion for new trial must be filed no later than thirty (30) days after sentence is pronounced,' Rule 24.1(b), A.R.Crim.P., is an appropriate accommodation of the interest of the judiciary in having the benefit of the trial court's development of the issues and the interest of the defendant in fully presenting any meritorious argument regarding those issues."
Id. at 897-98. We note that Ex parte Jackson was originally issued by the supreme court on February 28, 1992, but was later withdrawn and a substituted opinion was issued on May 8, 1992, the day the appellant was sentenced. See Id. at 896. This court takes the position that Ex parte Jackson applies not only to appointed counsel, but also to retained counsel.
While the appellant's counsel requested in his motion for new trial leave to review the trial transcript and to ascertain whether there were any other meritorious issues, he failed to comply with the procedure outlined in Ex parte Jackson, requiring new counsel to file a motion making such a request within 14 days of the date he was appointed or retained. This court takes the position that the procedure outlined in Exparte Jackson must be strictly complied with. Thus, because the appellant's counsel failed to comply with Ex parte Jackson, this argument is procedurally barred.
 III
The appellant argues that the trial court erred by denying his motion for a mistrial, which was based on allegedly improper statements and questions concerning prior alleged misconduct of the appellant and in the court's failure to eradicate the prejudice through curative instructions. On direct examination, the appellant's counsel asked, "Mr. Page, have you ever been convicted of a felony or a misdemeanor?" The appellant responded that his only conviction was in 1983 for driving under the influence of alcohol. On cross-examination, the following occurred:
 "Q [by the prosecutor:] Now, in response to what you said to your lawyer, he asked you if you had a criminal record, right? *Page 444 
"A Not that I know of.
 "Q You said you knew of one public drunkenness and that's all you know of?
 "MR. SHIPMAN [defense counsel]: He said he knew of one DUI.
 "Q Whatever your answer was, I think it was DUI. You didn't tell them about the carrying a concealed weapon conviction, did you?
 "MR. SHIPMAN: Your Honor, we object, that's not proper. I object, because that's not the proper way to ask the question.
 "MR. BECHER [prosecutor]: I'm just responding in kind, the door has been opened.
 "THE COURT: I think you have asked him a question about his prior convictions and he's answered, so I will allow the district attorney to pursue that.
 "MR. SHIPMAN: That's not the proper way to ask the question your honor.
"THE COURT: Overruled.
 "Q Back in '72, you were convicted of carrying a concealed weapon, were you not?
"A They threw it out.
 "Q They threw it out. It looks like a $50 fine and costs.
"A That's for violating —
 "MR. SHIPMAN: Your Honor, we object. He said it was thrown out. If they have evidence to the contrary to impeach him, they can bring in legal evidence. I certainly object to pointing to a piece of paper and saying it looks like you were convicted, he said it was thrown out.
"THE COURT: Overruled.
 "Q The DUI you were talking about, is that the one in December of 1971 or is that the one —
 "A I'm talking about that one on your record, I'm not talking about them when I was a kid.
 "Q You are talking about the one in August, August 13th of 1983?
"A '83.
 "Q How about the one May the 2nd of 1976, you were not talking about that one either?
 "MR. SHIPMAN: I object to this whole line of questioning — there has to be a predicate laid, as the prosecutor know[s], he's been doing this long enough. There is a predicate to be laid to even ask a question. He's been asking questions that are improper, and at this point we are going to ask for a mistrial.
 "THE COURT: Your motion is denied. Let me give an instruction to the jury with respect to this. Ladies and Gentlemen, in this case the indictment charges the defendant with one crime, and that is assault in the second degree. There is a lesser included crime that I will charge you on later in the case that involves assault in the third degree. The credibility of a witness may be attacked by introducing evidence that the witness has been convicted of a crime of moral turpitude. The crime of driving under the influence is not a crime of moral turpitude. You are to consider only the charge in this case, and the questions asked by the district attorney have been in an attempt to attack the believability or credibility of this witness. Only a crime involving moral turpitude goes to the credibility of this witness, and you can only consider that type of crime in determining whether or not you will give weight to this witness's testimony, or how much weight to give this witness's testimony. It will take me just a minute to look in one other place, and I will determine whether or not carrying a concealed weapon is a crime involving moral turpitude, and if it is, then there is a particular way that that evidence has to be introduced before you, it has not been introduced in the proper way, so I will ask you to disregard any evidence as to whether or not this defendant has been convicted of carrying a concealed weapon or driving under the influence as you determine what believability or credibility *Page 445 
to give this witness. So, with that instruction, we will proceed."
During the court's oral charge, the trial court again admonished the jury as follows to disregard any evidence of prior convictions: "I charge you that any prior conviction of the defendant is to be totally disregarded in determining the credibility of the defendant, or in determining whether he committed assault in the second or third degree."
Although the trial court overruled the appellant's objection, the curative instructions were adequate to remove any prejudice to the appellant. This court has held as follows:
 " ' "Courts have been perplexed in laying down satisfactory rules where illegal evidence, calculated to prejudice the defendant, has been received, and subsequently excluded; but it may be regarded as settled, in this state, that the admission of illegal evidence, which is subsequently excluded, and the jury instructed to disregard such evidence, cures the error and vitiates the exception reserved to its admission." Smith v. State, 107 Ala. 139, 144, 18 So. 306, 308
(1895). The instructions to the jury to disregard such evidence should be "direct, specific, and unequivocal." Pelham v. State, 23 Ala. App. 359, 361, 125 So. 688, 690 (1930). "Where evidence has been erroneously admitted, a clear instruction to the jury that it is not to be considered will ordinarily be allowed to have the effect of curing the error, though this Court has always regarded the practice with cautious disapproval." Maryland Casualty Co. v. McCallum, 200 Ala. 154, 156, 75 So. 902, 904 (1917)."
West v. State, 623 So.2d 380, 382 (Ala.Cr.App. 1993) (quotingJackson v. State, 593 So.2d 167, 173 (Ala.Cr.App. 1991)). Because the trial court adequately instructed the jury to disregard the evidence of the appellant's prior convictions, any prejudice to the appellant was effectively removed and, thus, the appellant's argument is without merit.
 IV
The appellant argues that the trial court erred by denying his motion to preclude the state's presentation of evidence "on any material not produced to defendant in accordance with the trial court's order granting unlimited discovery." The trial court had granted the appellant's pretrial discovery motion. At trial, the appellant moved to preclude the state from introducing any evidence not produced in accordance with the discovery motion. During the discussion on this motion to preclude, the state and the appellant presented versions of the discovery process. At the end of the discussion, the trial court stated the following:
 "We will give you five minutes to look over your jury list; we have used five of the ten minutes, and after you make your opening arguments, then I will ask Mr. Becher [prosecutor] to again open his file to Mr. Shipman to see what if anything, is new or has been added in the last year or two."
In its brief the state argues that this issue is procedurally barred only because the appellant failed to cite any legal authority for his argument and cites Vinzant v. State,462 So.2d 1037 (Ala.Cr.App. 1984), and Johnson v. State,500 So.2d 494 (Ala.Cr.App. 1986). The state wholly fails to address this argument in any other manner. As Judge Bowen stated in Arnoldv. State, 601 So.2d 145, 155 (Ala.Cr.App. 1992), " 'Vinzant is a useless legal fiction' which has no place in the criminal appeals arena." This court no longer follows Vinzant or its progeny for the proposition that an appellant's failure to cite any legal authority in an argument waives that argument on appeal. Thus, while we conclude that this argument is waived on other grounds, we do not rely on Vinzant or Johnson
as the state urges us to do.
The appellant did not object to the court's solution to the discovery dispute. More importantly, the appellant failed to receive an adverse ruling on his motion to preclude; therefore, this issue is procedurally barred for that reason. See Bambergv. State, 611 So.2d 450 (Ala.Cr.App. 1992); *Page 446 Nept v. State, 589 So.2d 801 (Ala.Cr.App. 1991).
 V
The appellant argues that he was denied his right to a speedy trial. The appellant, however, failed to raise this argument at the trial level; therefore, it is procedurally barred. Maul v.State, 531 So.2d 35 (Ala.Cr.App. 1987).
 VI
The appellant argues that "[t]he jury's verdict finding Mack Allen Page guilty of assault in the second degree is unsupported by the great weight and sufficiency of the evidence." The appellant's argument challenges both the sufficiency and the weight of the evidence. Recently, inZumbado v. State, 615 So.2d 1223, 1240-41 (Ala.Cr.App. 1993), this court noted the difference between the "sufficiency" and the "weight" of the evidence as follows:
 " 'The weight of the evidence is clearly a different matter from the sufficiency of the evidence. The sufficiency of the evidence concerns the question of whether, "viewing the evidence in the light most favorable to the prosecution, [a] rational factfinder could have found the defendant guilty beyond a reasonable doubt." Tibbs v. Florida, 457 U.S. 31, 37 [102 S.Ct. 2211, 2216, 72 L.Ed.2d 652] . . . (1982). Accord, Prantl v. State, 462 So.2d 781, 784 (Ala.Cr.App. 1984).
". . . .
 " 'In contrast, the "[t]he 'weight of the evidence' refers to 'a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause that the other.' Tibbs v. Florida, 457 U.S. at 37-38
[102 S.Ct. at 2216] (emphasis added [in Johnson]). We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. E.g., Franklin v. State, 405 So.2d 963, 964
(Ala.Cr.App.), cert. denied, 405 So.2d 966 (Ala. 1981); Crumpton v. State, 402 So.2d 1081, 1085
(Ala.Cr.App.), cert. denied, 402 So.2d 1088 (Ala. 1981); Nobis v. State, 401 So.2d 191, 198
(Ala.Cr.App.), cert. denied, 401 So.2d 204 (Ala. 1981). ' "[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine." ' Harris v. State, 513 So.2d 79, 81 (Ala.Cr.App. 1987) (quoting Byrd v. State, 24 Ala. App. 451, 136 So. 431 (1931))."
(quoting Johnson v. State, 555 So.2d 818, 819-20 (Ala.Cr.App. 1989). The appellant preserved his argument concerning the sufficiency of the evidence by moving for judgment of acquittal both at the close of the state's case and at the close of all the evidence. See Zumbado, 615 So.2d at 1241. He preserved his argument concerning the weight of the evidence by alleging in his motion for a new trial that "[t]he verdict of the jury is contrary to the law and evidence in this case." See Id. at 1241.
At trial, the state's evidence tended to show the following facts: The victim, Levern Green, went to his cousin's apartment. One of his cousin's neighbors, Stephanie Jones, told the victim that his cousin Dewayne Green had gone to the store and would be back shortly. Several people, including the appellant, were playing cards inside Jones's apartment. The appellant, who is white, looked at the victim, who is black, and uttered racial slurs. The victim responded to the slurs. The appellant continued making the racial slurs despite the fact that he was the only white person present in the apartment. Jones took the victim into the bathroom so that the situation could cool down. Several minutes later, Dewayne arrived, and he and the victim left and walked to Dewayne's apartment. The appellant, who had walked to his truck in the parking lot, continued yelling at the victim. The victim yelled back from Dewayne's doorway. As Dewayne, who feared for the victim's safety, was about to pull the victim back inside the apartment, the appellant fired a shotgun at the victim, striking him with pellets in the face, neck, chest, and groin.
At the time of trial, the appellant still had some discomfort from pellets that had remained in his body. He stated that he was told that if his doctor attempted to *Page 447 
remove the three pellets that remained in his eye, he might lose that eye.
Andy Jackson of the Huntsville Police Department investigated the offense. He took a statement from the appellant in which the appellant contended that he thought that the victim and Dewayne Green were coming toward him when he shot fired the shot. He did not indicate to Jackson that the shooting was accidental.
The indictment charged that the appellant "did, with intent to cause physical injury to another person, cause physical injury to Levern Ricky Green by means of a deadly weapon or dangerous instrument, to-wit: A shotgun, in violation of §13A-6-21 . . ." Code of Alabama 1975. The victim's testimony was sufficient to establish the "physical injury" element. See
§ 13A-1-2(8), Code of Alabama 1975. The evidence that the appellant used a shotgun is sufficient to establish the "deadly weapon" or "dangerous instrument" element. See § 13A-1-2(11) 
(12). The appellant's intent to cause physical injury may be inferred from the "circumstances of violence and brutality."See Ray v. State, 580 So.2d 103 (Ala.Cr.App. 1991). Thus, the state presented sufficient evidence to the jury from which it could find the appellant guilty beyond a reasonable doubt.
Furthermore, this court will not reweigh the evidence.See Zumbado, 615 So.2d at 1240. The credibility of witnesses is for the finder of fact. Id. at 1241.
Thus, the appellant's argument that the state's evidence was insufficient to sustain his conviction and that the verdict was contrary to the law and the weight of the evidence is without merit.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.